# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LAWRENCE W. HUMMEL,** | |
| Plaintiff, | Case No. 07 C 4798 |
| v. | Hon. Harry D. Leinenweber |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. For the following reasons, the motion is denied. The decision of the Commissioner is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 7, 2005, Hummel filed an application for disability and disability insurance benefits, alleging disability since October 18, 2003. His claim was denied initially and on reconsideration by the Social Security Administration (the "SSA"), and he filed a timely written request for hearing on March 2, 2006. On January 19, 2007, a hearing was held before an Administrative Law Judge (the "ALJ"). Hummel appeared and testified, and he was represented by counsel. On February 23, 2007, the ALJ found that Hummel was not disabled and denied benefits. Specifically, the ALJ found that Hummel had the residual functional capacity to perform unskilled work not involving constant exposure to the general

public, co-workers, or supervisors. AR 18. The ALJ also found that, in light of the objective medical evidence, Hummel's testimony concerning the intensity, persistence, and limiting effects of his physical impairments were not entirely credible.

Hummel's request for review was denied by the Appeals Council on July 20, 2007. On August 24, 2007, Hummel filed this action for review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

Hummel was born in 1948 and was fifty-eight years old on the date the ALJ issued his decision. AR 66. He has a high-school education and previously worked as a security guard and as a fleet service clerk at O'Hare Airport. AR 85-88, 356. He claims that he is unable to work due to depression, heart attack, and rages. AR 45, 111. He has also stated that he entered retirement early because he has a dislike for certain minority ethnic groups and has chosen to self-segregate in order to avoid getting into fights. AR 309, 252.

In February 2004, Hummel was evaluated by Dr. Gibson, a psychologist at the Hines Veterans' Administration Hospital ("Hines"). AR 252-55. Hummel had sleep problems but questioned whether he had other psychological problems. AR 252. He reported "harboring a chronic sense of rage against minorities in general whom he sees as having caused an erosion in the quality of 'western civilization' due to their 'increasing numbers in our society.'"

*Id.* He reported being in fights, with no regrets. *Id.* Hummel had no hallucinations, was well-oriented, had logical thought processes, and had no difficulty concentrating or following simple oral and written communication. AR 254. Dr. Gibson found that Hummel had chronic, ruminative anger with moderate potential for violence if provoked. AR 255. He diagnosed Hummel with intermittent explosive disorder and personality disorder. *Id.*

In April 2004, Dr. Samuel diagnosed Hummel with impulse disorder with intermittent explosive disorder and personality disorder. AR 247. Dr. Samuel prescribed Zoloft. *Id.* In April 2005, Hummel returned to Hines with continued anger issues. Dr. Powitz diagnosed anxiety disorder and narcissistic personality disorder and restarted Zoloft and Seroquel for sleep and agitation. AR 231.

In June 2005, Dr. Gilliland, a state agency psychologist, reviewed Hummel's medical history and reported that he presented with anxiety disorder, substance addiction disorder (alcohol abuse), and personality disorder. With respect to Hummel's functional limitations, he found that Hummel was mildly limited in his activities of daily living and maintaining concentration, persistence, or pace, and had moderate difficulty in maintaining social functioning. He found no episodes of decompensation. AR 168. Dr. Gilliland concluded that Hummel was not significantly limited in his understanding and memory, sustained concentration

and persistence (*e.g.*, ability to maintain attention and concentration, make simple work-related decisions, carry about detailed instructions), or adaptation. AR 172. He found that Hummel was moderately limited in his ability to interact appropriately with the general public and his ability to get along with coworkers without distracting them or exhibiting behavioral extremes. AR 173. He found that Hummel was not significantly limited in any other areas of social interaction.

In June 2005, Hummel had a heart attack, underwent a stent placement, and was hospitalized for two days. AR 176-218.

In January 2006, Dr. Appleton, a state agency psychologist, reviewed the evidence and affirmed Dr. Gilliland's psychiatric assessment. AR 294-95. Dr. Patey, a state agency physician, conducted a physical residual functional capacity assessment of Hummel and concluded that he had no significant limitations noted in cardiac function or activities of daily living, and that his stent placement did not preclude him from lifting up to 50 pounds occasionally and 25 pounds frequently. AR 301, 303. Hummel had no complaints of chest pain, shortness of breath, or peripheral edema. AR 303. Dr. Patey also concluded that Hummel could stand or walk for a total of about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and had an unlimited ability to push or pull. AR 297. Hummel also walks or rides a bike daily. AR 301.

In August 2006, x-rays of Hummel's spine revealed degenerative changes of the lower thoracic and lumbar spine and narrowing of the L4-5 and L5-S1 disc space. AR 306. Also in August 2006, Hummel saw Dr. Erickson at Hines and reported that his dislike for certain minority groups led him to self-segregate and enter retirement early. AR 307-09. He also complained of having back pain once a month, which occurred after he lay on the sofa too long. Dr. Erickson prescribed Tylenol. AR 309-10.

In November 2006, Dr. Kim noted that Hummel denied depression, suicidal or homicidal ideation, and delusions. Hummel reported that he took early retirement because of conflicts with people. Dr. Kim listed his active problems as including osteoarthritis, anxiety disorder, depressive disorder, narcissistic disorder, and coronary artery disease. AR 335. Hummel's thinking, energy, and concentration were okay. *Id*. Dr. Kim continued Zoloft, but discontinued Seroquel. AR 336.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court considers whether the ALJ's decision is supported by "substantial evidence" and based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir., 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. The Court must affirm the Commissioner's decision if his findings and inferences reasonably drawn from the record are

supported by substantial evidence, even though some evidence may also support the plaintiff's claim. 42 U.S.C. § 405(g); *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir., 1993). The Court limits its review to the reasons provided by the ALJ.

### III. **DISCUSSION**

"Disability" means "inability to engage in any substantial gainful activity by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*, 20 C.F.R. § 404.1527. "An individual shall be determined to be under a disability only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The claimant must show that "(1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy."

*Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir., 2000).

In applying the five-step sequential evaluation process, the ALJ found that Hummel's explosive personality disorder was a severe impairment, but that this impairment did not meet or equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17-18. The ALJ found that Hummel's testimony concerning his physical impairments was not entirely credible and that he had the residual functional capacity to perform unskilled work as long as it did not involve constant exposure to the general public, co-workers, or supervisors.

The Court finds that the ALJ's decision was supported by substantial evidence. The ALJ properly considered Hummel's physical condition and alleged physical limitations. Contrary to Hummel's assertion, the ALJ did consider his alleged knee, hip, and back complaints, as well as his heart problems. The evidence showed that his heart surgery did not prevent him from walking or riding a bike regularly, and he did not have chest pains. *See* AR 301. The ALJ properly considered Dr. Patey's assessment of Hummel and cited his conclusion that Hummel was capable of medium exertional work, such as lifting and carrying moderate amounts of weight, pushing and pulling, and sitting or standing for several

hours a day. *See* AR 18-19, 297-301. Hummel presented no evidence to contradict Dr. Patey's assessment. With respect to Hummel's alleged hip and knee problems, the ALJ found that these were not supported by the record. The lack of objective medical evidence was one reason, not the only reason, for the ALJ's denial of benefits. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical and other evidence."); SSR 96-7p ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."). *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir., 2000), cited by Hummel, is not on point, because in that case, the ALJ failed to give the opinion of claimant's treating physician controlling weight due to the physician's failure to order x-rays. Here, there are no opinions from any of Hummel's treating physicians regarding his functional limitations.

Moreover, the ALJ's credibility findings are entitled to deference. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir., 2000). Hummel himself reported on several occasions that the

reason he stopped working was because of personality conflicts, not because of problems with his knee or hip.  See AR 309, 335, 357. As the ALJ pointed out, Hummel testified that he still walks two to three miles about three days a week.  See AR 363.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied.  The decision of the Commissioner is affirmed. **IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

**DATE:** 10/22/2008